IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLUID POWER ENGINEERING COMPANY, INC., <br><br> *Plaintiff* <br><br> v. <br><br> COGNEX CORPORATION, <br><br> *Defendant.* | No. 22 C 2707 <br><br> Judge Virginia M. Kendall |

### MEMORANDUM OPINION AND ORDER

Fluid Power Engineering Company, Inc. ("FPE") entered into a series of one-year strategic partnership agreements with Cognex Corporation to sell Cognex's machine vision and industrial barcode reader systems in Illinois and Iowa. In November 2021, Cognex informed FPE that it did not wish to renew their agreement. FPE sued Cognex in Illinois state court for an alleged violation of the Illinois Franchise Disclosure Act ("IFDA") and a breach of the covenant of good faith and fair dealing. (Dkt. 1). Cognex removed the case to federal court and moved to dismiss the complaint for failure to state a claim. (Dkt. 10). For the following reasons, the motion is granted. (*Id.*)

### BACKGROUND

Cognex is a manufacturer of machine vision and industrial barcode reader systems. (Dkt. 1-1, Initial Complaint, ¶ 11). FPE is an Illinois-based distributor of industrial components for use in building and maintaining automated manufacturing processes. (*Id.* ¶ 13). Beginning in 2015, Cognex and FPE entered into a series of one-year "strategic partnership agreement[s]" granting FPE the right to sell Cognex products in Illinois and Iowa. (*Id.* ¶ 16). The agreement also provided

1

that FPE must purchase "demonstration equipment," offered at a discount with the right to resell the equipment later for a profit, and "hire and train specialized employees, including Cognex product managers and 'sensor specialists.'" (Dkt. 1-1, Strategic Partnership Agreement, §§ 2.1, 2.2, 4.2, 5.0). The parties expressly acknowledged that FPE acted "in the capacity of an independent purchaser," and the agreement did "not create a franchise relationship." (*Id.* § 11.10). Any disputes regarding the "validity, interpretation, construction, and performance of the agreement … shall be governed" by Massachusetts law, and all claims must be filed in "any court with jurisdiction to hear such disputes in Boston, Massachusetts." (*Id.* § 11.5.1).

The most recent—and final—contract began on January 1, 2021. (*Id.* ¶ 21). On November 3, 2021, Cognex invited FPE to attend a "partner meeting." (Dkt. 1-1, Initial Complaint, ¶ 22.) There, Cognex informed FPE that it would not be renewing the parties' agreement for the next year. (*Id.* ¶ 24).

Cognex filed an action in the United States District Court for the District of Massachusetts seeking a declaration that Cognex did not breach the agreement's terms and that the forum-selection clause was valid. (*See generally* Dkt. 1-2). Shortly thereafter, FPE sued Cognex in Illinois state court for serial violations of the Illinois Franchise Disclosure Act (Count I) and a breach of the covenant of good faith and fair dealing (Count II). (*See* Dkt. 1,1, Initial Complaint). Cognex removed the suit to federal court under our diversity jurisdiction, then filed a motion to transfer this action to the District of Massachusetts, (Dkt. 8), and a motion to dismiss for failure to state a claim, (Dkt. 10). The Court now resolves the motion to dismiss. (Dkt. 10).

## **LEGAL STANDARD**

A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss under 12(b)(6). *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir.

2

2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Twombly* and *Iqbal*, a court accepts well-pleaded facts as true and assesses whether the complaint states a plausible claim for relief. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

## **DISCUSSION**

### I. The Illinois Franchise Disclosure Act (Count I)

The IFDA ensures that prospective franchisees have the "necessary information to make an intelligent decision regarding franchises being offered for sale" and promotes "a better understanding of the business and the legal relationship between the franchisee and the franchisor." 815 ILCS 705/2. A "franchise" encompasses any agreement—even one that explicitly disclaims to be a franchise agreement—between two or more persons when, among other things, "the person granted the right to engage in [certain] business is required to pay to the franchisor or an affiliate of the franchisor, directly or indirectly, a franchise fee of $500 or more." *Id.* 705/3(1)(a)–(c). A "franchise fee" is "any fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement." *Id.* 705/3(1)(14).

The complaint here does not establish that FPE paid a franchise fee, either direct or indirect, under the IFDA. The agreement lacks any mention of a direct franchise fee: there is no mention of

the term or any similar language throughout the document, and the parties "expressly acknowledged" that the "Agreement does not create a franchise relationship between Cognex and [FPE]." (Dkt. 1-1, Strategic Partnership Agreement, § 11.10). Acknowledging this point, FPE maintains nonetheless that two provisions in the agreement independently represent an indirect franchise fee: (1) the purchase of demonstration equipment and (2) the hiring and training of Cognex managers and specialists. (Dkt. 20 at 7–10). Both fall short.

The IFDA specifies that "the purchase or agreement to purchase goods for which there is an established market at a bona fide wholesale price" is not considered a franchise fee. 815 ILCS 705/3(14)(c). The required purchase of demonstration equipment amounted to an agreement to purchase "goods for which there is an established market." *Cf. TLMS Motor Corp. v. Toyota Motor Distribs., Inc.*, No. 95-C-1180, 1998 WL 182475, at *5 ("[F]ederal and state courts, interpreting statutes similar to Illinois' FDA, have held advertising expenses to be ordinary business expenses and not indirect franchise fees."). The equipment was merely designed for the promotion of Cognex products sold by FPE. (Dkt. 1-1, Strategic Partnership Agreement, § 4.2.1). FPE bought the equipment at a discounted price and remained free to sell it, albeit two years after purchase, thereby profiting. (*Id.* Att. 2, § 9.0). Cognex also never made FPE purchase an "excessively large inventory," which might suggest a contractual requirement masquerading as a franchise fee. *See Digit. Equip. Corp. v. Uniq Digit. Techs., Inc.*, 73 F.3d 756, 760 (7th Cir. 1996).

This conclusion aligns with guidance from *Wright-Moore Corp. v. Ricoh Corp.*, 980 F.2d 432 (7th Cir. 1992). There, the Seventh Circuit explained that the "franchise fee" requirement in a franchise law ensures "that only those entities that have made a firm-specific investment are protected under the franchise laws; where there is no investment, there is no fear of inequality of bargaining power." *Id.* at 135–36. The cost of excess inventory, for instance, signals "inequality

4

of bargaining power" because a franchisor could essentially "prevent it from being liquid" by proclaiming the entity to no longer be an authorized dealer. *Id.* at 136. In contrast, ordinary business operations, such as a sales quota, are not franchise fees. *See id.* ("[U]nless the expenses result in an unrecoverable investment in the franchisor, they should not normally be considered a fee."). Comparing the two examples, demonstration equipment is more analogous to a sales quota. It is often necessary for the sales process, and the amount of equipment required is typically quite small (only enough to make an adequate demonstration). Therefore, a company—such as FPE—is not seriously disadvantaged by possessing the equipment after the dissolution of an agreement with the provider.

FPE maintains that 705/3(14)(c) exempts only *inventory* purchases. The demonstration-equipment provisions, then, could not be an inventory purchase because the agreement states the equipment is not inventory. But the statute's plain language never uses the word "inventory." It refers only to an agreement to purchase "*goods*," which logically includes demonstration equipment in addition to inventory. Moreover, the IFDA is broadly concerned with function over form, meaning that courts must look at the substance of the agreement over any explicit contract terms. The provisions related to demonstration equipment aimed to boost sales by allowing FPE to bolster sales and move inventory. Thus, the two types of goods are closely related and must be treated accordingly.

While costs incurred in training may be an indirect franchise fee, the amount must be "substantial and unrecoverable." *Wright-Moore*, 908 F.2d at 136. The facts alleged here are inadequate again. The complaint only states that FPE was required to "hire and train specialized employees … to sell Cognex products." (Dkt. 1-1, Initial Complaint, ¶ 19). This bare statement, bereft of any additional details, cannot support an inference that the prices paid were "substantial

and unrecoverable." *See Iqbal*, 556 U.S. at 678 ("The plausibility standard … asks for more than a sheer possibility ….").

## II. The Covenant of Good Faith and Fair Dealing (Count II)

"Every contract implies good faith and fair dealing between the parties to it." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 820 (Mass. 1991) (quoting *Warner Ins. Co. v. Comm'r of Ins.*, 548 N.E.2d 188, 190 (Mass. 1990)).[1] The implied covenant guarantees that both parties "enjoy the fruits of the contract, and, when performing the obligation of the contract, the parties 'remain faithful to the intended and agreed expectations' of the contract." *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 329 (Mass. 2007) (quoting *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004)). A party breaches the duty of good faith and fair dealing by violating "the reasonable expectations of the other." *Id.* The guarantee though "is only as broad as the contract that governs the particular relationship." *Id.* (quoting *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E. 667, 684 (Mass. 2005)). A party cannot act in bad faith, therefore, by following the contract. *See id.*

FPE has not demonstrated how Cognex violated the implied covenant of good faith and fair dealing. The two sophisticated parties entered into an agreement with an explicit term that allowed one side not to renew. Exercising a contractually stipulated term is consistent with good faith. *See Chokel*, 867 N.E.2d at 329. That harsh results or sore feelings might follow is an unfortunate—but common and predictable—happenstance. If FPE wished to have greater protection or continue to sell Cognex's products for longer, it should have negotiated that provision before signing the agreement instead of hurrying to federal court to argue than an implied duty should trump an unambiguous, mutually agreed upon contract.

---

[1] The parties agree that Massachusetts law governs the dispute. (Dkt. 11 at 7–8; Dkt. 20 at 11–12).

6

## **CONCLUSION**

For these reasons, Cognex's motion to dismiss is granted. (Dkt. 10). The dismissal shall be without prejudice to the filing of an amended complaint no later than November 30, 2022. Cognex's motion to transfer will be taken under advisement. (Dkt. 8). If FPE does not submit an amended complaint, the motion to transfer will be denied as moot, and the case will be terminated.

_____
Virginia M. Kendall
United States District Judge

Date: November 10, 2022